COMMONWEALTH vs. GLEN J. BREESE.

Suffolk.   March 4, 1980. — June 26, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Practice, Criminal,* Opening statement by prosecutor, Witness.

At a criminal trial, the judge did not abuse his discretion in denying the
defendant's motions for dismissal and for mistrial based on the prose-
cutor's failure to produce a witness whose expected testimony was
referred to in the prosecutor's opening statement.  [15-16]
At a criminal trial, the judge did not abuse his discretion in permitting
references to a witness's fear as reason for her delay in identifying the
defendant even though there was no showing that the defendant had
any part in producing that fear.  [16-17]
There was no merit to a defendant's contention that a mistrial should
have been granted because exculpatory evidence had been withheld
from the defendant.  [17-18]
There was no merit to a defendant's contention that the judge erred in
refusing to give a requested instruction on mistaken identification.
[18]

INDICTMENT found and returned in the Superior Court on
June 26, 1978.

The case was tried before *Brogna,* J.

*John C. McBride* for the defendant.

*Michael J. Traft,* Assistant District Attorney *(Jan Roller,*
Legal Assistant to the District Attorney, with him) for the
Commonwealth.

BRAUCHER, J.  The defendant appeals from his conviction
of murder in the first degree.  See G. L. c. 278, §§ 33A-33G;
St. 1979, c. 346; Mass.R.A.P. 1B, inserted by 378 Mass. 924
(effective July 1, 1979).  Early in the morning of Wednes-
day, May 31, 1978, the body of the victim, a prostitute
working in the "Combat Zone" in Boston, was found in an
apartment used by several prostitutes as a "trick pad" for
entertaining "dates."  Among other things the defendant

claims that the prosecutor in her opening described the testimony of a witness who later failed to appear, and that her statement was "irretrievably and fatally prejudicial to the defendant." See *Commonwealth* v. *Bearse*, 358 Mass. 481, 487 (1970). We affirm the conviction.

The Commonwealth produced evidence tending to prove the following facts. The defendant spent the evening of May 30, 1978, with his girl friend. They argued about his drinking, he went to her apartment "still sort of mad and evil," and he left a few minutes before midnight. A prostitute named Marie saw him in a Combat Zone bar, about six minutes' drive from the girl friend's apartment. Meanwhile, the victim and a prostitute named Linda had spent much of the evening in the same bar and another bar in the Combat Zone. About 1 A.M. the victim left Linda; she returned about 1:30 A.M. to ask Linda for the keys to the "trick pad" apartment, and she agreed to meet Linda about 2 A.M. to return the keys. At 1:45 A.M. the defendant backed his car into the car of a prostitute named Ruth in a Combat Zone parking lot. Ruth confronted him and copied his identification from his license. The victim was present and told Ruth the defendant was her date. She then got into his car, and they drove off. About 1:55 A.M. Marie came out of the "trick pad" apartment, met the victim and the defendant on the front steps of the building, and conversed briefly with the victim. A neighbor testified to a woman's screams from the apartment at 2 A.M., and the victim died about that time from forty-three stab and incised wounds. When the victim failed to meet Linda, Linda went to the apartment and found the body.

Between 6 and 7 A.M. the same morning, police officers visited the defendant at his apartment in Everett. He told them of the accident in the parking lot and said he had left with a female but had dropped her off when they could not agree on a price. When shown a picture of the victim, he said it looked like her. At 7:30 A.M. he called his girl friend, and told her what he had told the police about various details. She asked why he lied about the clothes he wore and

he gave an explanation and asked her to corroborate his statements. There was evidence that a bloody footprint found in the "trick pad" apartment matched the "somewhat unusual" footprint of the defendant, and that a hair matching his was found on a towel there.

1. *The missing witness.* In her opening statement the prosecutor said that Alice Thompson would testify that about the time the defendant was arraigned she asked him, "Aren't you the man who killed Karen [the victim]?" and he answered, "Yes, I killed that prostitute, and what's more I am going to kill the witness, too." Thirteen days after the opening statement a police officer testified that Alice Thompson had been in the court house on three trial days in the previous week, but that since then he had been unable to locate her. The judge called a bench conference and said, "I am just puzzled and noticed that puzzled look on some of the jurors' faces. Who is Alice Thompson?" After full discussion with counsel, the judge denied the defendant's motions for dismissal and for mistrial. The judge indicated that he thought it more prudent to instruct the jury in general terms than to remind them of the prosecutor's opening statement.

The prosecutor in her opening said that "what I say in the opening statement is not evidence" and explained that evidence would come only from witnesses and exhibits. She made a similar statement in her closing argument, referring specifically to "anything I said in my opening statement" that "was not presented in evidence." The judge gave general instructions to the same effect, and said specifically that the jury were "not to speculate as to what a witness who was not produced for whatever reason would have said or would not have said," regardless of mention in an opening statement. He added that "we had some mention of . . . maybe another woman who the police attempted to find, but were unable to, they said, and you are not to let that enter into your deliberations at all."

As a general rule, counsel is free to state in his opening anything that he expects to be able to prove by evidence. If the expected testimony does not materialize, it will not be

presumed that the prosecutor acted in bad faith. *Commonwealth* v. *Fazio*, 375 Mass. 451, 454-456 (1978), and cases cited. Like the *Fazio* case, the present case does not present a situation where the force of the prosecutor's opening remarks was overwhelmingly prejudicial and likely to leave an indelible imprint on the jurors' minds. Contrast *Commonwealth* v. *Bearse*, 358 Mass. 481, 487 (1970), where the missing testimony was presumptively inadmissible and transformed the "core" of the Commonwealth's case. In the present case the curative statement by the prosecutor and the judge's curative instructions were clear, and we think the judge did not abuse his discretion in deciding against dismissal or a mistrial.

2. *Witness fear.* In her opening statement, the prosecutor stated that Marie would testify that she was taken to a bar to see if she could identify the man she had seen with the victim, that thereafter certain things began to happen to her, "and she will tell you about them when she is on the stand, and these things caused her to have her phone cut off and to change the color of her hair."

Marie did testify to the visit to the bar with the police, but the judge excluded testimony as to the phone cut-off, the change of hair color, and the events that caused those decisions. She testified that she recognized the defendant in the bar but did not so inform the police until several days later. When asked the reason, she said, "I was scared on one point." The judge permitted the prosecutor to ask what the "one point" was, but ordered the answer struck: "I was scared because of my life was in danger and also my daughter. I have a little girl." Later a police officer testified without objection that Marie told him she was afraid to identify the defendant when she saw him in the bar.

In the closing argument the prosecutor argued that Marie's fear delayed her identification of the defendant. The prosecutor asked the jury to put themselves in Marie's place, when she was taken by the police into a bar where she was known. "Do you think if you knew your friend had been viciously mutilated, and that is what happened, that you

might be a little bit afraid if you saw the man and you knew you had to be out on the street? It's only common sense. She knew that he knew who she was so she was scared."

The defendant objected to each of these references to the fear of the witness, and moved for a mistrial on each occasion. He argues that there was no evidence tying her fear to actions of the defendant, that evidence of the fear of the witness was therefore inadmissible, and that the errors were so highly damaging and prejudicial that a mistrial should have been declared. He further argues that these references reinforced the prejudice resulting from the reference to Alice Thompson in the prosecutor's opening statement.

We do not agree. The evidence of Marie's fear described in the opening statement was highly relevant to show the reason for her delay in identifying the defendant. It was admissible even if the defendant had no part in producing that fear. G. L. c. 233, § 23. *Commonwealth* v. *Dougan*, 377 Mass. 303, 308 (1979). *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 415 (1978). We assume, without deciding, that the judge in his discretion could properly exclude evidence of anonymous threats because of the danger that they might be unfairly attributed to the defendant. But that exclusion does not render improper the references to the fear of the witness in the prosecutor's opening, the testimony, or the closing argument.

3. *Exculpatory evidence.* The defendant argues that a mistrial should have been granted because exculpatory evidence was withheld from the defendant. The evidence in question was the name of a man who rented the "trick pad" apartment for use by the several prostitutes, and the failure of various witnesses to identify items of clothing seized from the defendant's apartment. The record fails to show that the evidence was withheld. It also fails to show that it had any materiality. The defendant's theory that the victim might have been murdered by her pimp rests entirely on unsworn statements by defense counsel; not only was there no evidence to support it, but it was inconsistent with the sworn testimony of several witnesses. "The mere possibility

that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States* v. *Agurs*, 427 U.S. 97, 109-110 (1976).

4. *Mistaken identification.* The defendant claims error in the denial of his requested instruction on mistaken identification, citing *Commonwealth* v. *Rodriguez*, 378 Mass. 296, 301-302 (1979). We think, however, that the judge's charge as given adequately covered the issue of identification as it was presented in the circumstances of this case. See *Commonwealth* v. *Napolitano*, 378 Mass. 599, 608-610 (1979). There was no such danger of confusion between dishonesty and mistake as we found in the *Rodriguez* case.

5. *Section 33E.* We have reviewed the entire record in accordance with G. L. c. 278, § 33E, and find no reason to order a new trial or to direct the entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*