COMMONWEALTH vs. ROBERT W. ERRINGTON.

Worcester. October 18, 1982. — December 2, 1982.

Present: PERRETTA, CUTTER, & KASS, JJ.

*Evidence,* Other offense. *Witness,* Cross-examination. *Practice, Criminal,* Instructions to jury, Appeal.

Where, at the trial of indictments charging sexual offenses with a child under age fourteen, hearsay evidence, unaccompanied by a limiting instruction, was admitted during cross-examination of the victim to the effect that the defendant had committed similar acts with another child, and such evidence was not withdrawn from the jury's consideration until other witnesses had testified, this court, on appeal, reversed the defendant's convictions in order to avoid the possibility of a miscarriage of justice. [736-740]

On an appeal of convictions of sexual offenses with a child under age fourteen this court declined to consider material outside the record, which the Commonwealth submitted to it in an attempt to show that defense counsel, on cross-examination of the victim, knowingly pursued a line of inquiry which led to hearsay testimony that the defendant had committed similar acts with another child. [740-742]

INDICTMENTS found and returned in the Superior Court Department on December 9, 1981.

The cases were tried before *Donohue,* J.

*Angelo P. Catanzaro* for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. The indictments against the defendant charged unlawful sexual intercourse, unnatural sexual intercourse, and indecent assault and battery on a child under the age of fourteen. G. L. c. 265, §§ 23 and 13B. All the indictments involved the same victim. The defendant was convicted on the indecent assault and battery charges and found not guilty on the indictments charging him with sex-

ual intercourse. At trial, the victim was allowed to testify, over objection, that she had been told by a female child of somewhat similar acts of misconduct by the defendant with the other child. The trial judge later struck the response from evidence and gave a curative instruction. The defendant's principal contention on appeal is that the actions of the judge did not provide a sufficient remedy for the prejudice to him for these hearsay allegations. In the circumstances and for the reasons discussed below, we reverse the judgments so that there may be a new trial.

At the time of the incidents, the victim was twelve years old and was a frequent babysitter for the three children of the defendant and his wife. The Erringtons and the victim's parents were good friends. The victim testified that she would babysit at the defendant's house once or twice a week, and that, beginning in the fall of 1980, the defendant indecently assaulted her twice, October 25 and November 8, and raped her three times, November 8 and 9 and January 2, 1981. She continued to babysit for the Errington children through the spring of 1981, and told no one about these acts until April 29 and May 1, 1981, when she related them to her girlfriend and mother, respectively. Upon hearing her daughter's account, the victim's mother informed the police, who, in turn, called the defendant and asked him to come to the police station, where he was advised of his rights and questioned. The defendant denied the accusations.

At trial, the theory of the defense was fabrication of the charges by the victim because she had been fired the day before as a babysitter by Mrs. Errington. The defendant testified that his only physical contact with the victim had been a backrub over her sweater, in the presence of his daughter, on one occasion when the victim was wearing a neck collar due to a recent skating injury. The defendant's wife related how the day before the defendant was called by the police, she had informed the victim that her services as a babysitter were no longer wanted and that she (the victim) had behaved irresponsibly in leaving the children unattended

to go to the store and in allowing a neighborhood child, whom we shall refer to as Mary Jones, to play in the house.

In anticipation of this testimony, defense counsel cross-examined the victim concerning the five-month hiatus between the last incident on January 2 and her complaint to her mother on May 1. The victim explained that she had been concerned about the friendship between her parents and the Erringtons — "I wasn't about to break up any friendship" — but that after the passage of time — "I think it had reached a point where somebody should know. Even if it was to break up the friendship." The following questioning by defense counsel next occurred:

Q. "Well, that is when you decided that?"
A. "Yes."
Q. "You decided that this is the time that someone should know?"
A. "I decided to take my own advice."
Q. "You took your own advice?"
A. "Yes, because I told . . ."
Q. "Okay. You have answered the question you took your own advice?"
A. "Yes. I told . . . [Mary Jones] came to me . . ."
DEFENSE COUNSEL: "Well, objection to that, Judge."
THE COURT: "No. You have asked the question. I am going to let her answer it."
DEFENSE COUNSEL: "I just asked her if she took her own advice."
THE COURT: "I know. But you asked her another question. Go ahead."
A. "[Mary Jones] came to me and she said . . ."
DEFENSE COUNSEL: "Well, objection to the . . ."
THE COURT: "I am going to let her have it. You asked the question."
DEFENSE COUNSEL: "Objection to it, your Honor, please. I didn't ask her that question."
A. "[Mary Jones] came up to me and she said that Mr. Errington had been doing certain things to [Mary],

and she came to me telling me about that; and I told her to go home and tell her mother. Because she lived right next door. And I decided to take my own advice and tell my own mother."

The trial judge denied defense counsel's requests that the answer be struck and that a mistrial be declared. Defense counsel then questioned the victim briefly about the extent of her relationship with Mary Jones. On redirect examination the prosecutor asked and was told that Mary was eight years old at the time of the conversation with the victim. The Commonwealth presented two more witnesses, the victim's mother and the police officer who took statements from the victim, and then rested. The trial judge informed defense counsel, sua sponte, that he was going to strike the conversation between the victim and Mary Jones and instruct the jury to disregard it.[1] Defense counsel agreed that he should do so but also stated that he didn't know "if that would be enough to cure it."

1. *Hearsay Evidence of Similar Acts of Misconduct.*
"The principle on which the defendant rests his first argument is well established: commission of an independent crime cannot be admitted to show commission of the crime charged." *Commonwealth* v. *Imbruglia,* 377 Mass. 682, 695 (1979). See *Commonwealth* v. *Welcome,* 348 Mass. 68, 70-71 (1964). When, however, "the evidence is not too remote in time, or is connected with the facts of the case, it may be admitted to establish 'knowledge, intent, motive, method, material to proof of the crime charged.'" *Commonwealth* v. *Imbruglia,* 377 Mass. at 695, quoting from *Commonwealth* v. *Murphy,* 282 Mass. 593, 598 (1933).

---

[1] The trial judge instructed the jury: "I am going to strike from the record the conversation that the [victim] had with or supposedly had with the girl by the name of [Mary]. Disregard those. Put those out of your mind. It is just as if that was never said. Now, when I do strike evidence, it should be stricken from your minds completely. And it is just as if it never occurred. So, put that out of your minds now."

The Commonwealth argues that the victim's statement was necessary "not only to show the victim's state of mind but to give the jury a sense of the 'big picture' of the events leading up to [the victim's] reporting the incidents and erase the false impressions of recent fabrication created by defense counsel." Thus, the argument continues, the present case is identical to and controlled by *Commonwealth* v. *Hollyer*, 8 Mass. App. Ct. 428, 430 (1979), where it was held that hearsay evidence of similar acts of misconduct possessed "other relevant probative purposes" in that, as here, it "bore on the issue of [the victim's] silence."

Whether the probative value of the statement was outweighed by the danger of unfair prejudice to the defendant was a matter within the sound discretion of the trial judge. The present case is not readily disposed of by *Hollyer*. Here, it is not clear whether defense counsel elicited the answer before he made efforts to prevent the victim's response.[2] Additionally, the trial judge determined, albeit belatedly, that the answer was inadmissible and that it should be struck from evidence.

In the circumstances, the trial judge correctly decided that the victim's response should be withdrawn from consideration by the jury. The victim's statement had some relevance to the question of the delay in her complaint to her mother, but the victim had explained that her reluctance to come forward earlier was attributable to her concern for the friendship (corroborated by the victim's mother) that existed between her parents and the defendant and his wife. The victim's response did not evince any emotion or state of mind very strongly probative of her silence. See and contrast, *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 816

---

[2] The Commonwealth has furnished us with materials outside of the record to argue that the predictability of the victim's response should have been apparent to defense counsel who ran the risk of eliciting the answer, as in *Commonwealth* v. *Hollyer*, 8 Mass. App. Ct. at 430. Defense counsel has filed a motion to strike those materials, and we allow the motion to the extent that we disregard those matters for the reasons discussed in part 2 of this opinion, *infra*.

(1973); *Commonwealth* v. *Campbell,* 371 Mass. 40, 43 (1976); *Commonwealth* v. *King,* 387 Mass. 464, 470-472 (1982).

It is implicit in the trial judge's tardy striking of the statement sua sponte that he had determined that the probative force of the evidence was outweighed by the risk of prejudice. The trial judge's action gives some indication of a sense of unease on his part about the possibility of prejudice in what was developing into a close case. Having concluded that, on the whole, the hearsay allegations were too prejudicial to allow the statement to remain in evidence, see *Commonwealth* v. *Ellis,* 321 Mass. 669, 670 (1947); *Commonwealth* v. *Welcome,* 348 Mass. at 70, the trial judge struck it and gave a curative instruction. See note 1, *supra.* Hence, an important question before us is the adequacy and efficacy of that instruction in the circumstances of this case.

The evidence of similar acts of misconduct by a defendant carries with it the danger of misuse by the jury. *Commonwealth* v. *Stone,* 321 Mass. 471, 473 (1947). *Commonwealth* v. *Welcome,* 348 Mass. at 70. The danger in the present instance was not reduced by any simultaneous instruction to the jury limiting their consideration of that evidence to the victim's state of mind or to the issue of any silence on her part.[3] See *United States* v. *Brown,* 490 F.2d 758, 763 (D.C. Cir. 1974) ("A statement which would be pure hearsay as to the truth of the matters alleged is not made inadmissible thereby if introduced solely to show the declarant's state of mind and if accompanied by a limiting instruction. This represents a basic policy judgment that the possibility of misuse of the evidence for the impermissible purpose, *when minimized by a limiting instruction,* is a risk worth chancing when compared to the harms that would likely result from the total exclusion of valuable relevant evidence" (emphasis supplied).

---

[3] Although defense counsel objected to the statement, moved to strike it, and requested a mistrial, he failed to request a limiting instruction. See *Commonwealth* v. *Roberts,* 378 Mass. 116, 126 (1979). Because the trial judge ultimately struck the statement, sua sponte, we consider the effect of the delayed curative instruction rather than defense counsel's omission.

Immediate and forceful curative instructions, of course, can be sufficient to offset prejudice on the basis that "jurors may be expected to follow instructions to disregard matters withdrawn from their consideration." *Commonwealth* v. *Crehan*, 345 Mass. 609, 613 (1963). See *Commonwealth* v. *Gibson*, 357 Mass. 45, 49 (1970) (error did not require reversal, "particularly in view of the quick corrective action of the court"); *Commonwealth* v. *Martin*, 362 Mass. 243, 245 (1972) ("Prompt curative instructions adequately dealt with the reference by a police witness at trial to a separate offense by a person seen with" the defendant).

Limiting instructions may be subject to doubt, however, where the evidence "is so close to the ultimate issue at hand that there is a greater danger that the jury will misuse the statement and assume some truth to the allegation of past conduct" or where "the external facts in the statement are so inflammatory, as to unduly arouse the jury's emotions of prejudice or hostility." *United States* v. *Brown*, 490 F.2d at 776, 777. The same is true of delayed curative instructions. *Commonwealth* v. *Crehan*, 345 Mass. at 614. *Commonwealth* v. *Hoppin*, 387 Mass. 25, 31 (1982). Cf. *United States* v. *Bussey*, 432 F.2d 1330, 1334-1335 (D.C. Cir. 1970). Although we usually would give controlling weight to the breadth of discretion possessed by the trial judge, the present circumstances as a whole sufficiently raise doubt in our minds whether the jury may not have been unduly influenced by the hearsay statement.

Here the statement contained somewhat inflammatory allegations close to the issue at hand. It was unaccompanied by a limiting instruction. The curative instruction was not given until after the victim, her mother, and a police officer had testified. The jury did not accept totally the victim's credibility, as is apparent from the not guilty verdicts concerning the acts of sexual intercourse, about which the victim gave a detailed and specific account. "[W]e cannot say that the jury could not have been influenced by . . . [the hearsay statement]. The doubt ought to be resolved in favor of the defendant." *Commonwealth* v. *Stone*, 321

Mass. at 474. To minimize the possibility of any miscarriage of justice (in a case where a relatively minor factor could affect the jury's decision), we think that there should be a new trial.

As there may be a retrial we expressly do not hold that the statement must be deemed inadmissible in all circumstances. But see, *United States* v. *Brown*, 490 F.2d at 777. The trial judge is free to determine at any appropriate time whether the risk of prejudice has been necessitated by whatever cross-examination of the victim may take place or by other aspects of any future trial. In deciding whether the statement can be put before the jury with a limiting instruction, the trial judge should also consider whether any offensive portions of the response can be deleted without distorting the statement.[4] Cf. *United States* v. *Brown*, 490 F.2d at 778; *United States* v. *Fosher*, 568 F.2d 207, 217 n. 25 (1st Cir. 1978).

2. *Matters Outside the Record.*

At oral argument before us, the Commonwealth contended that it should have been apparent to defense counsel that continued cross-examination of the victim concerning her decision to report the incidents would result in the statement of which he now complains. See *Commonwealth* v. *Hollyer*, 8 Mass. App. Ct. at 430-431. Support for this contention was sought in a police report of an interview with the victim which the Commonwealth had reproduced as an addendum to its brief and which contained the following statement: "[The victim] stated that she had talked to a

---

[4] The Commonwealth contended at oral argument before us that deletion was impossible, that the offensive hearsay allegations were inseparable from the remainder of the answer. We think that a fair, nonprejudicial summary of the victim's explanation is to the effect that she had decided that if anyone in her predicament were to seek her advice, she would advise her to tell her parents. Cf. *United States* v. *Brown*, 490 F.2d at 779 n. 80.

When counsel know before trial that offensive or inflammatory evidence of questionable admissibility may be offered, they appropriately may seek guidance on a motion in limine.

neighborhood girl and Errington allegedly was committing the same acts on this girl, (interview to follow)."[5]

Defense counsel moved to strike the Commonwealth's brief for inclusion of material outside the record. See Mass.R.A.P. 8(a), as appearing in 378 Mass. 932 (1979). We denied the motion on the basis that it would be appropriate merely to disregard any matters not properly brought before us.

Two days after oral argument, we received a letter from the prosecutor advising us that the information referred to during oral argument did not appear in the police report; rather, it could be found in the victim's medical reports, copies of which were attached to the letter.[6] The Commonwealth stated in its letter that "[t]he pre-trial conference report, filed with the Superior Court, indicates that defense counsel made a request for these records, and since they were available at the time, he would have received them. Therefore, he should have been fully aware of what prompted [the victim] to tell her mother long before asking the question at issue." Appellate counsel, who was not trial counsel, renewed his motion to strike.

We disregard the materials presented to us by the Commonwealth for the purpose of demonstrating that trial counsel knowingly pursued a dangerous area of inquiry and brought the harm upon himself. The police report did not impart a sufficient warning to trial counsel. The Commonwealth made no effort either in the trial court or before us to have the record expanded to include the police report or the medical record. See Mass.R.A.P. 8(a) and (e), as appearing in 378 Mass. 932, 934 (1979). Thus, there is nothing in the record properly before us which supports the assertions made by the Commonwealth. We think it inappropriate in

---

[5] There appear to be notations above the words "girl" and "interview" but we are unable to make out what they are.

[6] Specifically, the statement is contained in a document labelled as "History of Incident: (Use patient's own words)," and it reads: "After this time I decided I had to tell someone and I got the courage to do it when a 9 year old friend of mine told me he had done the same stuff to her."

the light of our rules of appellate practice to consider these materials over the protest of defense counsel. See *Commonwealth* v. *Hubbard,* 371 Mass. 160, 176 (1976); *Commonwealth* v. *Cote,* 7 Mass. App. Ct. 150, 151 (1979); *Germaine* v. *Hull, ante* 678 (1982).

3. *Commonwealth's Opening Statement.*

In view of our conclusion that the defendant's convictions must be reversed, it is unnecessary to consider the defendant's contention that a mistrial should have been declared at the close of the Commonwealth's evidence because of overwhelming prejudice to the defendant as a result of the Commonwealth's failure to offer testimony concerning all of the acts described in its opening statement. See, e.g. *Commonwealth* v. *Bearse,* 358 Mass. 481, 487 (1970). But see also *Commonwealth* v. *Fazio,* 375 Mass. 451, 454-456 (1978); *Commonwealth* v. *Breese,* 381 Mass. 13, 15-16 (1980).

*Judgments reversed.*

*Verdicts set aside.*