COMMONWEALTH vs. ROBERT W. ERRINGTON.

Worcester. May 3, 1983. — January 25, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Evidence*, Other offense, Relevancy and materiality. *Witness*, Impeachment. *Practice, Criminal*, Opening statement by prosecutor, Mistrial.

At the trial of indictments charging sexual offenses with a child, unresponsive testimony elicited from the victim during cross-examination, that she had been told by another child that that child had been sexually abused by the defendant, was admissible as tending to explain the victim's failure to complain of the defendant's conduct at an earlier time and to counter a damaging inference that she had fabricated her accusation in retaliation for being fired as babysitter for the defendant's children; therefore, the judge's admission of the testimony over a general objection, and his initial refusal to strike it on motion were not error, nor was there error in the judge's failure to give a limiting instruction, since none had been requested. [879-882]

Possible prejudicial effect on a defendant charged with sexual offenses with a child would not preclude the admission in evidence of a conversation between the victim and another child as to other sexual offenses by the defendant, where this evidence was crucial to the rehabilitation of the Commonwealth's principal witness. [881-882]

At the trial of indictments charging sexual offenses, including sexual intercourse and unnatural sexual intercourse with a child under age sixteen, no error appeared in the denial of a motion for a mistrial based on the Commonwealth's failure to produce evidence as to anal sexual intercourse, after such evidence was predicted in the prosecuting attorney's opening statement, where there was no indication that the statement was made unreasonably or in bad faith; nor, in the context of the trial, was the statement so prejudicial as to entitle the defendant to a mistrial irrespective of the prosecutor's good faith. [882-883]

INDICTMENTS found and returned in the Superior Court Department on December 9, 1981.

The cases were tried before *James P. Donohue*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Jerry C. Effren* for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant was tried on four indictments charging indecent assault and battery on a child under the age of fourteen, on one indictment charging unlawful sexual intercourse with a child under sixteen, and on two indictments charging unnatural sexual intercourse with a child under sixteen. All the indictments involved the same victim. A jury found the defendant guilty on the four indictments charging indecent assault and battery, and not guilty on the remaining charges. Sentence was imposed. The defendant appealed. The defendant argued in the Appeals Court, and argues here, that the trial judge improperly permitted the alleged victim to testify that she had been told by another child that that child had been sexually abused by the defendant. He argues that the prejudicial effect of that evidence was not adequately counteracted by the judge's subsequent striking of the testimony and instruction to the jury to disregard it. The defendant also contended in the Appeals Court, as well as here, that he was entitled to a mistrial, which he requested at the close of the Commonwealth's case, because in his opening the prosecutor predicted that the alleged victim would testify to an act of anal intercourse and no such evidence was presented.

The Appeals Court agreed with the first claim of error and reversed the convictions. *Commonwealth* v. *Errington,* 14 Mass. App. Ct. 733 (1982). We allowed the Commonwealth's application for further appellate review. We disagree with the conclusion reached by the Appeals Court. We affirm the convictions.

The evidence disclosed that there were four incidents involving the defendant and a twelve year old girl that occurred while the girl was babysitting the defendant's children. On direct examination the alleged victim testified that these incidents occurred on October 25, November 8 and November 29, 1980, and on or about January 3, 1981; that the first time she told anyone about them was about April 28

or 29, 1981, when she spoke to her friend; that she told her mother about the incidents on May 1, 1981; and that she did not tell her mother sooner because she did not want to break up the friendship between her parents and the defendant and his wife.

On cross-examination, the witness testified that she continued to babysit for the defendant's children during the period that the incidents were said to have taken place, and for several months thereafter, without complaint. In addition, she denied that the defendant's wife had criticized her for leaving the children alone or had fired her shortly before she complained to her mother about the defendant's conduct, and she denied that she had told her friend that she had "made this whole thing up."

After the victim testified on cross-examination that many things had influenced her to tell her mother about what had happened, the following colloquy took place:

DEFENSE COUNSEL: "And you weren't worried then about breaking up the friendship between your mother and your father and the Erringtons, right?"

THE WITNESS: "No. I think it had reached a point where somebody should know. Even if it was to break up the friendship."

DEFENSE COUNSEL: "Well, that is when you decided that?"

THE WITNESS: "Yes."

DEFENSE COUNSEL: "You decided that this is the time that someone should know?"

THE WITNESS: "I decided to take my own advice."

DEFENSE COUNSEL: "You took your own advice?"

THE WITNESS: "Yes. Because I told — "

DEFENSE COUNSEL: "Okay. You have answered the question. You took your own advice?"

THE WITNESS: "Yes. I told — [Mary Jones[1]] came to me — "

DEFENSE COUNSEL: "Well, objection to that, Judge."

---

[1] "Mary Jones" is a fictitious name used by the Appeals Court, which we also adopt.

THE JUDGE: "No. You have asked the question. I am going to let her answer it."

DEFENSE COUNSEL: "I just asked her if she took her own advice."

THE JUDGE: "I know. But you asked her another question. Go ahead."

THE WITNESS: "[Mary Jones] came to me and said — "

DEFENSE COUNSEL: "Well, objection to the — "

THE JUDGE: "I am going to let her have it. You asked the question."

DEFENSE COUNSEL: "Objection to it, your Honor please. I didn't ask her that question."

THE WITNESS: "[Mary Jones] came up to me and she said that Mr. Errington had been doing certain things to [Mary Jones], and she came to me telling me about that; and I told her to go home and tell her mother. Because she lived right next door. And I decided to take my own advice and tell my own mother."

This colloquy was followed by a side bar conference at which defense counsel moved that the witness's answer be struck and that a mistrial be declared. The judge denied the motions and noted counsel's objections.

After the cross-examination was completed, the Commonwealth presented two more witnesses and rested. Then, the judge informed counsel sua sponte that he was going to strike the conversation between the victim and "Mary Jones," and he instructed the jury to disregard that evidence.[2] Defense counsel agreed that the conversation should be struck, but he told the judge, "I don't know if that would be enough to cure it." Thereafter, the defendant testified, denying the charges against him. His wife testified that in late April, 1981, she had told the alleged victim that

---

[2] The judge instructed the jury: "I am going to strike from the record the conversation that the [victim] had with or supposedly had with the girl by the name of [Mary]. Disregard those. Put those out of your mind. It is just as if that was never said. Now, when I do strike evidence, it should be stricken from your minds completely. And it is just as if it never occurred. So, put that out of your minds now."

she would not babysit anymore because she was not respon-
sible. The jury would have been warranted in finding that
this occurred shortly before the alleged victim complained
to her mother.

Defense counsel's question, "You took your own advice?"
called for only a "yes" or "no" answer. Therefore, the testi-
mony about what "Mary Jones" had said was unresponsive
and defense counsel's objection was appropriate. However,
an unresponsive answer need not be precluded or struck if
the answer is otherwise admissible. *Brown* v. *Wong Gow
Sue,* 354 Mass. 646, 649 (1968). *Commonwealth* v. *Mc-
Garty,* 323 Mass. 435, 439-440 (1948). *Nelson* v. *Hamlin,*
258 Mass. 331, 341 (1927). That leads us to whether evi-
dence of the conversation between the witness and "Mary"
was relevant and competent, after which we shall consider
its admissibility in the light of possible prejudice to the de-
fendant.

The credibility of the alleged victim was critical to the
Commonwealth's case. Her testimony on cross-exam-
ination that she continued to babysit for the Erringtons
without complaint during the period that the incidents were
supposed to have happened, and for several months there-
after, warranted the inference that her accusations were
afterthoughts and were untrue. Although the subject of
delayed complaint was first introduced during direct exam-
ination, the witness's testimony on cross-examination consti-
tuted impeachment evidence, which in turn invited reha-
bilitation. In addition, the impeachment value of that
evidence was heightened by defense counsel's questions
about whether the defendant's wife had criticized the wit-
ness's performance as a babysitter and had fired her shortly
before she complained to her mother of the defendant's ac-
tions. Although the witness's answers to those questions
were in the negative, the questions themselves suggested
that the witness may have been criticized and fired, thereby
further suggesting that her accusations against the defend-
ant may have been motivated less by her desire to expose the
truth than by her desire to retaliate, or to escape blame, for

the termination of her employment. Furthermore, since it would have been improper for counsel to have attempted to communicate that impression to the jury by innuendo through a series of questions that were being answered in the negative, *Commonwealth* v. *Bianco*, 388 Mass. 358, 369 (1983); *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975), the trial judge was entitled to assume that defense counsel had independent evidence of the facts that were suggested by his questions. That he did indeed have such evidence was subsequently demonstrated by the defendant's wife's testimony. Thus, the credibility of the alleged victim, on whose testimony the Commonwealth's case depended, was seriously challenged on cross-examination, and the Commonwealth's need to rehabilitate the witness was clear.

"It is well established that a witness may explain, modify, or correct damaging testimony that was elicited on cross-examination." *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982). A witness who has been impeached by a prior inconsistent statement may explain *why* he has made inconsistent statements. *Commonwealth* v. *DiLego*, 387 Mass. 394, 399 (1982). *Commonwealth* v. *Smith*, 329 Mass. 477, 479-480 (1952). A witness who has been impeached by his testimony that he was silent in circumstances naturally calling for expression may explain *why* he was silent. *Commonwealth* v. *Dougan*, 377 Mass. 303, 306-309 (1979). *Commonwealth* v. *Ferreira*, 373 Mass. 116, 130-131 (1977). *Commonwealth* v. *Fatalo*, 345 Mass. 85, 86-88 (1962). The principle enunciated by those cases governs the present case, in which the Commonwealth's witness was impeached by her testimony on cross-examination and her lack of credibility was suggested by the cross-examiner's questions. The testimony and questions tended to create doubt concerning *why* the witness made accusations, and suggested, as an answer, that she made them up in response to being criticized and being fired from her babysitting position. The Commonwealth had a substantial and legitimate interest in rehabilitating its witness by showing *why* the witness informed her mother about the defendant's alleged

conduct after a long period of silence. The evidence was relevant and competent "to correct any mistaken conclusions the jury may have drawn [about the witness's state of mind] from the defendant's questions as well as to rehabilitate the witness." *Commonwealth* v. *Jackson,* 384 Mass. 572, 584 (1981).

Of course, the hearsay rule precluded admission of Mary Jones's statement to prove the truth of the statement; that is, that the defendant had done something to her. Mary Jones's statement was inadmissible to prove that the defendant had done something to Mary Jones for the further reason that the defendant's conduct toward Mary Jones had no relevancy other than to show the defendant's criminal disposition. See *Commonwealth* v. *Welcome,* 348 Mass. 68, 70-71 (1964); *Commonwealth* v. *Stone,* 321 Mass. 471, 473 (1947). But, at least apart from considerations of unfair prejudice to the defendant, Mary Jones's statement was relevant, and therefore was admissible, not to prove the fact asserted, but because the fact that the statement was made, regardless of its truth or falsity, tended to rehabilitate the Commonwealth's witness by explaining why, after a long period of silence, she complained of the defendant's conduct to her mother.

One consideration remains. We must determine whether the reasons for admitting the conversation between the witness and Mary Jones outweigh the possible prejudicial effect of that evidence. *Commonwealth* v. *Silva,* 388 Mass. 495, 507 (1983). *Commonwealth* v. *Cefalo,* 381 Mass. 319, 336 (1980). We recognize the inflammatory nature of Mary Jones's statement, particularly since it accused the defendant of the same type of conduct as that charged by the indictments. We are mindful, too, that even if a proper limiting instruction were to be given, there was a danger that the jury would misuse the evidence to conclude that the defendant had a propensity to commit sexual crimes against children. Nevertheless, the Commonwealth's serious need for that evidence to rehabilitate its witness is obvious, the need was created by the cross-examination, and if the defendant

had requested it, he would have been entitled to a prompt jury instruction limiting the evidence to the question of the alleged victim's state of mind when she first accused the defendant. We are unwilling to assume that the jury would not have heeded those instructions. See *Commonwealth* v. *Jackson,* 384 Mass. 572, 579 (1981); *Commonwealth* v. *Leno,* 374 Mass. 716, 719 (1978). We conclude, therefore, that the judge properly permitted the witness to testify about her conversation with Mary Jones, and properly refused to strike that testimony and to declare a mistrial. This holding finds support in *Commonwealth* v. *Dougan,* 377 Mass. 303, 308 (1979), wherein we said that "[a]lthough evidence of other crimes cannot of course, be admitted as tending to prove the commission by the defendants of the crime charged, *Commonwealth* v. *Stone,* 321 Mass. 471, 473 (1947), such evidence can be admitted for other relevant purposes including the explanation of a witness's fear of going to the police or testifying. *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 816 (1973). *Commonwealth* v. *Douglas,* 354 Mass. 212, 225 (1968), cert. denied, 394 U.S. 960 (1969). *United States* v. *Cirillo,* 468 F.2d 1233 (2d Cir. 1972), cert. denied, 410 U.S. 989 (1973)."

Because the evidence of Mary Jones's statement was admissible for at least one purpose, its admission over a general objection, and the judge's refusal to strike it on motion, were not erroneous. Furthermore, since there was no request for a limiting instruction, the judge's failure to give such an instruction was not error. *Commonwealth* v. *Roberts,* 378 Mass. 116, 126 (1979). *Commonwealth* v. *Carroll,* 360 Mass. 580, 588-589 (1971). The action taken by the judge on his own motion at the close of the Commonwealth's case, striking the conversation between the alleged victim and Mary Jones, and instructing the jury to disregard it, does not establish that an earlier error had occurred. We need not speculate on the judge's reason for taking that action. In any event, the defendant could not have been harmed by it.

The other error argued by the defendant is the denial of his motion for a mistrial which was made at the close of the

Commonwealth's case based on the Commonwealth's failure to produce evidence of anal intercourse after such evidence was predicted in the Commonwealth's opening. The argument is without merit. The prosecutor was entitled to state in his opening whatever he reasonably and in good faith expected to prove by evidence. *Commonwealth* v. *Fazio,* 375 Mass. 451, 454-456 (1978). Although the testimony predicted by the prosecution did not materialize, there is no indication in the record that the statements concerning anal intercourse were made unreasonably or in bad faith, and neither unreasonableness nor bad faith are to be presumed. *Commonwealth* v. *Fazio, supra* at 454. *Commonwealth* v. *Hartford,* 346 Mass. 482, 486 (1963).

The defendant argues, without citation to supporting authority, that regardless of whether the prosecutor's prediction was in good faith or bad faith, the opening was so prejudicial that he was entitled to the declaration of a mistrial. We do not agree. We need not decide whether an opening made in good faith may ever create such prejudice as to entitle a defendant to a mistrial. There was no such prejudice here. The prosecutor's statements added little to the considerable evidence of sexual abuse, including intercourse. Also, lack of prejudice is demonstrated by the verdict of not guilty of unnatural sexual intercourse. In addition, before the Commonwealth's opening, and at the close of the evidence, and again in his final jury instructions, the judge advised the jury that an opening is not evidence and that the evidence comes only from the witnesses. See *Commonwealth* v. *Breese,* 381 Mass. 13, 16 (1980). In these circumstances, the judge was not required to declare a mistrial.

> *Judgments of the Superior Court*
> *affirmed.*