## Commonwealth *vs.* Mark C. Blackwell.

No. 97-P-0320.

Bristol. March 26, 1998. - May 20, 1998.

Present: Warner, C.J., Smith, & Perretta, JJ.

*Rape. Evidence,* Sexual conduct, Relevancy and materiality. *Witness,* Credibility. *Error, Harmless.*

At the trial of an indictment for rape of a child under sixteen years of age, the judge properly allowed the prosecutor to elicit testimony about the defendant's relationship with another young girl, where such testimony was relevant to the credibility of both the victim and the second young girl, who was also the defendant's alibi witness. [807]

At the trial of an indictment for rape of a child under sixteen years of age, the judge's error in allowing the prosecutor to elicit testimony about the defendant's alleged impregnation of another young girl was not prejudicial, where the Commonwealth's case was strong, where the prosecutor did not use the erroneously admitted testimony in closing argument, and where the defendant himself put the issue of his involvement with the second young girl before the jury. [807-809]

Indictment found and returned in the Superior Court Department on March 9, 1994.

The case was tried before *Richard J. Chin,* J.

*Susan E. Taylor* for the defendant.

*Anne W. Folino,* Special Assistant District Attorney, for the Commonwealth.

Perretta, J. On his appeal from a conviction by a jury on an indictment charging him with rape of a child under sixteen years of age, see G. L. c. 265, § 23, the defendant argues that the trial judge erred in allowing the Commonwealth to elicit testimony about his relationship with another young girl and his alleged impregnation of her. In light of the strength of the Commonwealth's case, we conclude that the improper testimony was not substantially prejudicial to the defendant and affirm his conviction.

1. *The evidence.*[1] We summarize the evidence presented at trial. Jane, the victim, was a fourteen year old high school student when she first met the defendant in March, 1993, at the home of her friend, Carol. He told Jane that he was around eighteen or nineteen years old. Within a few weeks of their meeting, they began a "boyfriend-and-girlfriend-type" of relationship. Soon after they became involved with each other, the defendant began to ask Jane to engage in sexual relations with him. Jane refused, explaining to him that there would be no intercourse without marriage, that she had morals, and that her parents were very strict. Indeed, Jane's parents would not even allow boys to call Jane. When the defendant wished to speak with her, he would go to Carol's house and she would place the call to Jane for him.

On May 7, 1993, the defendant spoke with Jane and suggested that she meet him on May 10 instead of going to school. Jane agreed. On the morning of May 10, she and another friend, Mary, boarded the school bus which arrived at the school at about 7:20 A.M. Jane and Mary then walked toward the area where Jane was to meet the defendant, at Apache Court at the Potter housing project where he had told Jane that he lived. When Jane saw the defendant coming from the housing project up ahead, she gave her book bag to Mary and asked that she put it in her (Jane's) school locker. Mary took the bag and returned to school.

Jane and the defendant walked back toward Apache Court. The defendant left Jane for about fifteen minutes and then returned in a Sunshine Taxi and picked her up. They were dropped off at an apartment at 480B Maxfield Street in New Bedford where they remained until about 1:45 P.M. While at the apartment, Jane and the defendant engaged in intercourse twice. The defendant told Jane that if anyone were to discover what they had done, she was to insist that nothing had happened and that she did not even know him.

Jane and the defendant returned to Jane's school in a Sunshine Taxi. When Jane tried to board the school bus to go home, she was not allowed to do so. There was a school rule that anyone who had not attended school for the day could not ride the bus home, and the bus driver had seen Jane getting out of the taxi.

Three days later, Jane's mother confronted her about her

[1]The names of the victim and the young witnesses are fictitious.

relationship with the defendant. Jane told her mother that she had gotten herself into a situation from which she could not extricate herself, that she was scared and didn't know what to do, and that she had engaged in intercourse with the defendant. Jane's parents brought her to the police station where they met with a detective from the sexual assault unit.

Carol testified that several days after May 10, 1993, the defendant called her twice. During the first conversation, the defendant told Carol that the police had been to his house, and he warned Carol that Jane "had better not be saying he raped her." During the second call, he instructed Carol to tell Jane that he had friends who knew who she (Jane) was and where she lived and that if the rape charge proceeded to court, he would lie.

There were two witnesses who testified on the defendant's behalf. Vera related that she attended school with Jane and had become friendly with her in 1993. Prior to May 10, 1993, she and Jane had attended a class on "date-rape." After that class, Jane told her that she was going to bring the defendant to court on a charge of rape, that the accusation was not true, that she intended to marry the defendant, and that if her mother believed that the defendant had raped her, she would force him to marry her.

Ellen testified that as of 1993, she had been the defendant's girlfriend for about one year. She stated that he lived with her and her family on Harvard Street in New Bedford and that they were together the entire day of May 10, 1993.

2. *The error.* After Jane testified to the events in issue, defense counsel cross-examined her at length concerning her delay in reporting the rape and her motive to lie, that is, the fact that she did not make complaint until after she discovered that the defendant had another girlfriend, Ellen. Jane admitted that she was very hurt and angry to learn about that relationship.

On redirect examination, Jane stated that Ellen was about her age, that she did not know her personally but that another girl told her that Ellen was pregnant with the defendant's child. Jane testified that upon hearing about the defendant's involvement with Ellen, she became angry and hurt "because he was supposed to be with me," and because "I had lost my virginity to him and I find out he was with someone else."

This questioning by the prosecutor was allowed on the following basis: "It's a question of what she knew as to whether

or not this is enough motive for her to lie. You've opened up the door. Everything that she knew about [Ellen] is in."[2] Defense counsel did not request that the trial judge instruct the jury on the limited purpose of the evidence, that it was not being offered to show that Ellen had in fact become pregnant by the defendant, and that the evidence could be considered only on the issue of whether Jane had a motive to falsely accuse the defendant of rape.

3. *Discussion.* We see no force in the defendant's argument that the prosecutor should not have been allowed to ask any witness any questions about his (the defendant's) relationship with Ellen. The defendant intended from the outset to call Ellen to testify on his behalf, and it was he who initiated exploration of that relationship on cross-examination of Jane to show her motive to lie. Any relationship between Ellen and the defendant was relevant not only to Jane's motive to falsely accuse the defendant but also to Ellen's motive to lie about the defendant's whereabouts on May 10, 1993. In view of these circumstances, the defendant is in no position to complain about questions concerning his involvement with Ellen.

Evidence of rumors that the defendant had impregnated Ellen, however, stands on a different footing. The victim's motive to lie had been brought out during her cross-examination without reference to any rumors of a pregnancy, a matter brought up by the prosecutor on redirect examination of the victim. We are unable to appreciate how Jane's testimony about such rumors could refute the evidence of her motive to lie or otherwise rehabilitate her. Compare *Commonwealth* v. *Errington,* 390 Mass. 875, 881 (1984). There, the victim testified as to a friend's accusations about the defendant's misconduct toward the friend which was identical to that complained about by the victim. Because the Commonwealth had a serious need for the evidence — the rehabilitation of its principal witness — the court concluded that the reason for admitting the hearsay statements outweighed the possible prejudicial effect of that evidence. *Id.* at 881-882.

Although we conclude that it was error to allow Jane to relate the rumor of the defendant's impregnation of Ellen, we think the error was non-prejudicial. "An error is non-prejudicial only

---

[2]Consistent with this reasoning, the trial judge also ruled that, although the prosecutor could question Ellen about her relationship with the defendant, no questions were to be put to her about any pregnancy.

'[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' " *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983), quoting from *Kotteakos* v. *United States*, 328 U.S. 750, 764-765 (1946). See *Commonwealth* v. *Woods*, 419 Mass. 366, 375-376 (1995).

The Commonwealth's case was strong. Jane's testimony about being with the defendant on May 10, 1993, was corroborated by her friend Mary, who testified that she walked toward Apache Court with Jane that morning and took her book bag back to school for her while Jane continued to walk toward a man coming from the housing project and that she saw Jane and the defendant that afternoon standing in front of the school; by the dispatcher from the taxi company, who verified the fact that a cab went from Apache Court to 480 Maxfield Street at 7:34 on the morning of May 10, 1993, and from 480 Maxfield Street to Jane's school at 1:37 that same afternoon; by the school official, whose attendance records established that Jane was absent from school that day; and by Carol's testimony concerning the defendant's inculpatory telephone calls to her subsequent to Jane's complaint to the police.

Additionally, in showing that Jane had a motive to lie and in presenting Ellen as an alibi witness, the defendant himself put the issue of his involvement with another young girl squarely before the jury. Further, we think the youthfulness of the witnesses could not have been kept from the jury for the reason, if no other, that the evidence showed that they all attended high school together. Finally, there was no demonstrable misuse of the erroneously admitted testimony by the prosecutor. Although the jury had not been instructed about the limited purpose of Jane's testimony concerning Ellen, the prosecutor was aware of the limitation and made no mention of the defendant's relationship with Ellen or her alleged pregnancy during her closing argument to the jury.

In view of the evidence and the circumstances in which it

was presented, we conclude that the admission of the improper testimony was not substantially prejudicial to the defendant.

*Judgment affirmed.*