## Commonwealth vs. Robert Fales.

No. 02-P-231.

Hampden. March 18, 2003. - December 3, 2003.

Present: Laurence, Duffly, & Berry, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Fresh complaint. *Practice, Criminal,* Assistance of counsel, Request for jury instructions.

At the trial of indictments charging rape by force of a child under sixteen and indecent assault and battery on a child under the age of fourteen, the defendant's counsel was not ineffective in not asking for a fresh complaint instruction on certain testimony, where the testimony was relevant to providing a time frame and the manner of the victim's disclosures and was not admitted in order to corroborate the victim's testimony regarding her disclosure of assaults, and where defense counsel's decision to permit the line of questioning describing the circumstances of the disclosure appeared to have been a tactical judgment that was not manifestly unreasonable. [104-107]

Indictments found and returned in the Superior Court Department on March 29, 2000.

The cases were tried before *Judd J. Carhart,* J.

*Kenneth I. Seiger* for the defendant.

*Richard B. Morse,* Assistant District Attorney, for the Commonwealth.

Duffly, J. A jury found the defendant, Robert Fales, guilty on one indictment charging rape by force of a child under sixteen, G. L. c. 265, § 22A, and on seven indictments charging indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B. In this appeal, the defendant claims that his trial counsel was ineffective for failing to request a limiting instruction on evidence that he characterizes as fresh complaint. We affirm.

*Background.* During a bench conference with counsel just prior to the December 4, 2000, trial, the prosecutor told the trial

judge he was abandoning his plan to seek to introduce fresh complaint evidence because the victim's report of events leading to indictment of the defendant, her stepfather, was made thirty-nine months after the defendant moved out of the house. Instead, he sought leave to have two of the individuals who had been designated as fresh complaint witnesses testify to having had conversations with the victim, without disclosing details of the conversations, in order to provide a frame of reference for how the victim's disclosure came about. The defendant's trial attorney agreed that, as long as there was no testimony as to the substance of the conversations, the prosecutor could introduce the evidence to put the victim's complaint in context. Trial proceeded in conformity with these restrictions.

The Commonwealth called as its first witness the victim, who testified to events leading to the initial assault, which took place when she was six years old. The victim lived with the defendant, her mother, and her baby brother. The victim testified that the incidents forming the basis of the indictments occurred twice a month during the years 1993 to 1996 and that the sexual assaults took place on Saturday mornings while her mother was at work or doing errands and the defendant, who was unemployed at the relevant times, was home alone with the victim and her brother. Most incidents were similar to the first sexual assault. On that Saturday morning in the summer of 1993, the victim was not allowed to leave the house without obtaining permission from the defendant. Wanting to play next door, she knocked on the closed door to the master bedroom, which was shared by the defendant and her mother. The defendant told the victim to enter. The defendant, naked and seated on the bed, was watching pornography on television and masturbating. He told the victim she could not have permission to leave the house unless she took off her clothes. While undressed and lying on the bed, the defendant touched the victim's breasts. The victim testified to other encounters in which the pattern was much the same, differing only in the nature of the defendant's contact with her — at other times he touched her vagina and buttocks with his hands; sometimes he rubbed his penis against her. On two occasions, he forced her mouth to his penis, and once he licked her vagina. The victim was afraid to tell her mother about the as-

saults, because she thought she would not be believed and would be blamed.

The assaults did not stop until 1996, when the defendant moved out of the house. He and the victim's mother soon divorced, and the victim had little contact with the defendant for the next thirty-nine months. It was not until October, 1999, that the victim told anyone of the events. She made the initial disclosure to a close friend who was upset because of an incident with a boy at a party that had made her feel ashamed. The victim testified that her friend "was really scared and . . . was crying, and that's what made me tell her." Later, believing she was there to support her friend, the victim accompanied her to see the school counselor; while there, the friend urged the victim to tell the counselor what she had told the friend. At a second meeting which took place soon thereafter, the counselor told the victim that, as a mandated reporter, the counselor would have to inform the Department of Social Services about the victim's disclosures. The friend and the counselor both testified substantially to the foregoing events.

*Discussion.* The defendant agrees that neither the friend nor the counselor testified to any details of the conversations they each had had with the victim. He argues that the testimony of these witnesses was tantamount to fresh complaint testimony and, relying on familiar principles, see *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974), that his trial attorney was ineffective in failing to request a fresh complaint instruction.

Defense counsel's opening statement, the thrust of his cross-examination of the two witnesses, and his closing argument all were consistent with the position he took at the sidebar conference prior to trial and revealed a trial strategy which consisted of an attack on the victim's credibility that focused both on the three-year delay in disclosing the events and on the manner in which the disclosure was made.[1] Thus, the defense strategy was

---

[1]According to the defense, the story told by the victim was a fabrication created to console her friend, who was upset by a sexual encounter with a boy she met at a party. Later, at her friend's urging, the victim repeated her story to the school counselor and afterward became upset and angry at the loss of control over the situation. As defense counsel stated in his opening, this was like a child who is holding an air-filled balloon that has not been tied off and

at least partially dependent upon the testimony of these witnesses as to the context of the victim's disclosure.

Now on appeal, the defendant complains that the friend's testimony and that of the counselor were, in essence, evidence of fresh complaint that corroborated the victim's testimony that she had disclosed the defendant's assaults to these individuals. He argues that the evidence should not have been admitted without a limiting fresh complaint instruction and that his trial counsel was ineffective for failing to request such an instruction.

We disagree that the testimony was admitted in order to corroborate the victim's testimony regarding her disclosure of the assaults. Rather, the evidence was relevant to providing the time frame and manner of the victim's disclosures. This was consistent with the theory of defense and, as to the Commonwealth's proof, provided evidence of the circumstances of disclosure and of the state of mind of the victim and the reasons underlying the delayed disclosure.

The introduction of such evidence has been permitted to explain a long period of silence and to counter a defense of recent fabrication. We are, however, mindful of the prejudice inherent in such evidence and thus of the need for appropriate limitations on its admissibility. Guiding principles may be found in the following cases.

In *Commonwealth* v. *Dougan*, 377 Mass. 303, 306-309 (1979), there was testimony provided by a complaining witness, not objected to at trial, that his apartment had been ransacked and that he had waited, out of fear of his assailants, before telling police that he had been kidnapped and beaten and his girlfriend raped in his presence. The court disagreed that evidence of the apartment ransacking was admissible only upon a showing that one of the defendants had committed the act, stating that the evidence was "relevant to the victims' state of

then lets go of it. "That balloon goes in every possible direction until it is deflated, and the child has no control over where that balloon will end up." In his closing argument, he urged the jury to recall the meeting with the counselor, during which the friend "was egging [the victim] on, 'Go ahead, tell her.' [The victim], I would suggest, is so desperate at that point that she concocted this story. . . . [She] valued her relationship with [her friend] to the extent she was willing to accuse a man, who had been out of her life for at least three years, of these very heinous things."

mind and reasons for the delay in making a complaint." *Id.* at
308. See *Commonwealth* v. *Breese*, 381 Mass. 13, 17 (1980)
(evidence of witness's fear highly relevant to show reason for
her delay in identifying defendant).

In *Commonwealth* v. *Richardson*, 423 Mass. 180, 187 (1996),
a young victim who had delayed disclosing incidents of sexual
assault was permitted to testify that, during a discussion with a
group of friends, one of the friends told of having been raped
by the defendant, prompting the victim's disclosure to the group
that the defendant had raped her. "The testimony regarding
another rape was not admissible for its truth . . . . [It] was
admissible, however, 'because the fact that the statement was
made, regardless of its truth or falsity, tended to rehabilitate the
Commonwealth's witness by explaining why, after a long period
of silence, she complained of the defendant's conduct." *Ibid.*,
quoting from *Commonwealth* v. *Errington*, 390 Mass. 875, 881
(1984).

Of significance to the determination in *Richardson* was the
fact that the evidence, conceded to be prejudicial, was justified
as necessary to rehabilitate the Commonwealth's witness. The
defendant in that case had elicited, on cross-examination of the
victim, the testimony that she had had opportunities to report
the rape but had not done so. *Id.* at 187. Likewise, the decision
in *Commonwealth* v. *Dougan*, 377 Mass. at 306-307, 309, was
made in the context of an entire case during which the trial
judge was mindful of the potential prejudice of such testimony
to the defendant and had precluded the prosecutor from refer-
ring in his opening remarks to incidents of threats and violence
against the victims which had deterred them from going to the
police. The trial judge, sustaining defense counsel's objection,
also precluded the prosecutor, during direct examination of the
first victim, from eliciting testimony as to a second incident (in
addition to the apartment ransacking), in order "to see what
would develop during cross-examination." After the first victim
had testified about the incidents on redirect, the judge precluded
the second victim from testifying about them during her direct
examination so that the jury would only hear about the incidents
once. *Id.* at 309.

Thus, consistent with the principles set out in *Richardson* and

*Dougan*, and cases cited therein, a trial judge should ascertain in advance whether the defense plans to make reference in his opening to the circumstances of the victim's disclosure and, if not, preclude the prosecutor from doing so. Further, absent an indication from defense counsel (as occurred here) that the circumstances of disclosure are relevant to the theory of defense, the prosecutor should not be permitted to question as to the circumstances of the victim's disclosure until the issues are first developed during cross-examination by defense counsel. In such circumstances it also would be appropriate for the judge to give a limiting instruction, following such testimony, that the evidence is admissible only as to the question of the victim's state of mind when she first accused the defendant. See *Commonwealth* v. *Errington*, 390 Mass. at 881-882.

Here, there was no objection to the testimony and no request for a limiting instruction. Defense counsel's decision to permit the line of questioning describing the circumstances of the disclosure appears to have been a tactical judgment on his part that corroboration of the victim's testimony, albeit prejudicial to the defense, was worth risking in light of the potential effect of the information on the victim's credibility. "We cannot say, exercising hindsight, that such a tactical choice was manifestly unreasonable." *Commonwealth* v. *Dutra*, 15 Mass. App. Ct. 542, 550 (1983).

*Judgments affirmed.*