## Commonwealth *vs.* Shane H. Hall.

No. 05-P-631.

Berkshire. February 14, 2006. - June 2, 2006.

Present: Duffly, Brown, & Katzmann, JJ.

*Rape. Evidence,* Prior misconduct, Admissions and confessions, Relevancy and materiality, Impeachment of credibility, Fresh complaint. *Practice, Criminal,* Argument by prosecutor.

At the trial of an indictment charging rape, the judge did not commit reversible error by admitting in evidence testimony regarding a prior bad act of the defendant, where the testimony's probative value (specifically, providing an explanation for the victim's seven-year delay in reporting the crime to police) outweighed any prejudicial effect. [392-396]

At the trial of an indictment charging rape, comments made by the prosecutor in closing regarding the victim's youth did not constitute an impermissible appeal to the jurors' sympathies and emotions, and were not so prejudicial as to require reversal, where the statements were made to rebut the defendant's theory of the case and were directed to specific situations where the victim's age or experience were relevant, such as her willingness to obey the defendant. [396-397]

Indictment found and returned in the Superior Court Department on January 23, 2004.

The case was tried before *Daniel A. Ford,* J.

*William A. Korman* for the defendant.

*Deanna C. Roberts,* Assistant District Attorney, for the Commonwealth.

Katzmann, J. After a mistrial, the defendant, Shane H. Hall, was retried and convicted by a Superior Court jury of rape, and acquitted of kidnapping. He appeals his conviction, claiming that where the victim's seven-year delay in reporting the crime to law enforcement was used to attack her credibility, the judge committed reversible error by allowing prior bad act testimony, which provided the victim's explanation for the lapse in time. He also complains that the judge permitted the prosecutor impermis-

sibly to play upon the jury's sympathies and emotions during closing argument. We affirm.

*Background.* We summarize the evidence the jury could have found, reserving certain details for discussion in connection with the specific issues raised. On December 15, 1996, the victim and her friend, Holly Johnston, arrived at the defendant's apartment on Burbank Street in Pittsfield. The victim had never met the defendant, but was going to his apartment to meet her boyfriend, John Wick, an acquaintance of the defendant. The defendant, the victim, Johnston, and Wick spent some time talking, and some of them drank beer. Johnston then became sick and the victim escorted her to the store and back to her house. The victim and Wick made arrangements to meet back at the defendant's apartment a few hours later.

When the victim returned to the apartment, the defendant was home but Wick was not there, so she decided to wait for him. The victim and the defendant passed the time talking and watching television. In testimony that is at issue in this appeal, the victim stated that, before the rape, she and the defendant were talking about people they both knew, and the defendant mentioned "Day Day" Boone. "[The defendant] asked me if I knew him. I told him no, that I had only heard of him. And [the defendant] told me that there was a man who was causing trouble with him one time and he had Day Day take care of him." The victim stated that there was no further discussion with the defendant about that topic. The defendant also told the victim that her relationship with Wick would never work out. The defendant was drinking beer and smoking marijuana during this time.

The sexual assault followed. It took the defendant two attempts to convince the victim to stay in his bedroom long enough for him to remove her shirt. They were also interrupted by the arrival of Wick, who eventually left without seeing the victim because she hid in a closet.[1] The victim then insisted on leaving, and the defendant became violently angry. The defendant locked the victim in the apartment and subsequently dragged her up a flight of stairs by her hair when she tried to

---

[1] The victim stated that she hid from Wick because she thought he would be angry to find her without her shirt in the defendant's bedroom.

leave. He then took the victim to his bedroom where he raped her twice. He released the victim the following morning.

The victim went straight to Johnston's house, where she informed Johnston of the incident, but swore her to secrecy because she was afraid the defendant would retaliate by sending Boone after her if the police were notified. The victim had no further contact with the defendant until the trial in 2004. On November 27, 2003, the victim learned from a newspaper article that Boone had been sentenced to prison. She also learned that the defendant, who had previously been out of the area, would be returning to Pittsfield. On November 27, 2003, the victim contacted a rape crisis center. On the following day, accompanied by Johnston, she went to the Pittsfield police department and reported the rape to Detective John Grey.

The victim, Johnston, Detective Grey, and Percilla Fancher (whose mother was the defendant's landlord) testified for the Commonwealth. The defendant, Robert Szukala (a public defender investigator), and Brian Lee (the defendant's friend) testified for the defense. The thrust of the defense and testimony was that the intercourse with the victim was consensual, that her version of the events was false, and that there was no sexual assault.

*Discussion.* As previewed in the opening statements, an issue in the case was the victim's seven-year delay in reporting the rape and kidnapping, and the adverse inference regarding her veracity and the credibility of her story that might arise from that lapse of time. The defendant claims that the judge abused his discretion by permitting the victim to testify on direct examination about the statements she contends the defendant made regarding his use of Boone to take care of a person who was causing him trouble. According to the victim, because she had been afraid that the defendant would send Boone after her, she reported the rape only when she learned (seven years after the alleged offense) that Boone had been imprisoned.

The defendant, who testified that he did not know Boone and did not speak to the victim about him, argues that the victim's testimony regarding Boone was irrelevant and prejudicial prior bad act evidence. He contends that it was introduced impermissibly to show that he has a propensity for crime. The Com-

monwealth responds that this evidence was admissible because it explains the victim's state of mind, specifically, why she waited seven years to report the rape. While the Commonwealth contends that there are other bases for the admissibility of the testimony, and while the grounds upon which the judge based his decision are not clear from the record presented,[2] in upholding the admissibility we need not go beyond the limited basis discussed presently. *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997) ("An appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings"). See *Commonwealth* v. *Bennett*, 414 Mass. 269, 271 (1993), adopting *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992) ("A prevailing party is, therefore, entitled to argue on appeal that the judge was right for the wrong reason, even relying on a principle of law not argued below").

The general rule is that a prosecutor may not introduce

---

[2]At the start of the retrial on November 30, 2004, the judge adopted the evidentiary rulings he made at the first trial. On November 10, 2004, at the pretrial motion hearing for the first trial, both parties argued the question of the admissibility of the defendant's purported statement regarding Boone. The judge reserved decision until the matter came up at trial, stating at the hearing that he was inclined to admit the testimony, because "if one of the aspects or one of the claims is the alleged victim was forced and threatened into submission, I think that's probative. So unless I hear some argument, the prejudice outweighs the probative value, I'm inclined to admit it. Why don't you think about it a little bit. And I'll take it up again before your opening statement." Shortly thereafter during that hearing, defense counsel argued it was his understanding that the testimony was being offered to explain why the victim waited seven years to report the offense. He argued that the probative value was outweighed by the prejudice to the defendant. The judge then stated: "I'm going to ask the assistant D.A. not to mention it during the opening statement . . . . And when you get to the point where you intend to bring it up, ask to come to side bar. I'll make my ruling based upon what I have heard in the opening statements and her testimony to the point."

There is no transcript in the record of the first trial (which ended in a mistrial). We note that there was no objection in the second trial when, on the victim's direct examination, the prosecutor elicited the testimony regarding Boone. Given that for the second trial the judge adopted the evidentiary rulings he had made in the first trial, one may infer that during the first trial the judge addressed the issue and admitted the testimony. We also note that both the prosecutor and defense counsel referred to the victim's delay in reporting the crime in their opening statements during the second trial.

evidence to show that a defendant has previously misbehaved for the purpose of showing his bad character or propensity to commit the crime charged. See *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985). Nevertheless, evidence of prior bad acts by a defendant may be admissible for other limited purposes, such as "to show a common scheme or course of conduct, a pattern of operation, absence of accident or mistake, intent, or motive." *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994). Evidence of such prior bad acts is not restricted to those bases, and may be "admissible for other relevant probative purposes." *Commonwealth* v. *Butler*, 445 Mass. 568, 574 (2005), quoting from *Commonwealth* v. *Cordle*, 404 Mass. 733, 744 (1989), *S.C.*, 412 Mass. 172 (1992). Prior bad act evidence may also be admitted where it "tend[s] to rehabilitate the Commonwealth's witness by explaining why, after a long period of silence, she complained of the defendant's conduct." *Commonwealth* v. *Errington*, 390 Mass. 875, 881 (1984). "A witness who has been impeached by [her] testimony that [she] was silent in circumstances naturally calling for expression may explain *why* [she] was silent" (emphasis in original). *Id.* at 880. In such circumstances, the statement of explanation is "admissible, not to prove the fact asserted, but because the fact that the statement was made, regardless of its truth or falsity, tended to rehabilitate the Commonwealth's witness by explaining why, after a long period of silence, she complained of the defendant's conduct." *Id.* at 881. See *Commonwealth* v. *Dougan*, 377 Mass. 303, 308 (1979); *Commonwealth* v. *Richardson*, 423 Mass. 180, 187 (1996).

In this case, the defendant's statement about Boone was not admitted as tending to prove that he had committed the crimes charged, but as evidence of explanation of the victim's fear of going to the police. See *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 816 (1973); *Commonwealth* v. *Dougan*, 377 Mass. at 308. "It is well established that a witness may explain, modify, or correct damaging testimony that was elicited on cross-examination." *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982). That the impeachment first occurs during cross-examination, as in *Errington*, or was introduced during the opening statement, as happened here, is a distinction without a

difference. In either event, the defendant has quite understandably raised a credibility issue, suggesting fabrication and creating doubt as to why the witness made the accusations, and a resultant need by the Commonwealth to rehabilitate its witness. "The Commonwealth had a substantial and legitimate interest in rehabilitating its witness by showing *why* the witness informed [the police] about the defendant's alleged conduct after a long period of silence. The evidence was relevant and competent 'to correct any mistaken conclusions the jury may have drawn [about the witness's state of mind] from the defendant's questions as well as to rehabilitate the witness.' " *Commonwealth* v. *Errington*, 390 Mass. at 880-881, quoting from *Commonwealth* v. *Jackson*, 384 Mass. 572, 584 (1981). Compare *Commonwealth* v. *Montanino*, 409 Mass. 500, 506 (1991) (no need to rehabilitate witness where no evidence had been presented to impeach witness's credibility); *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 566 (2001) (same).

That testimony regarding delayed reporting is probative does not end the judge's inquiry; admission of such evidence, even if for limited purposes, is only permitted where the danger of prejudice does not outweigh the probative value of the evidence. See *Commonwealth* v. *Tobin*, 392 Mass. 604, 613-614 (1984); *Commonwealth* v. *Montanino*, 409 Mass. at 505-506. Any prejudicial impact was outweighed by the probative value of the testimony regarding Boone. This testimony did not implicate conduct of a sort with which the defendant was charged, thus diminishing any inflammatory impact. See *Commonwealth* v. *Hynes*, 40 Mass. App. Ct. 927, 928 (1996). Indeed, even where, unlike here, the alleged other bad act evidence is similar to that with which the defendant is charged, determination regarding admissibility is left to a case-by-case determination. See *Commonwealth* v. *Errington*, 390 Mass. at 878; *Commonwealth* v. *Richardson*, 423 Mass. at 187 (testimony regarding another rape admitted). See also *Commonwealth* v. *Mitchell*, 38 Mass. App. Ct. 184, 195-196 (1995) (affirming admission of testimony where important prosecution witness in murder trial was impeached by fact that he initially lied to police, and judge permitted him to explain that he lied out of fear of defendant who had stabbed him months earlier). Compare *Commonwealth*

v. *Demars*, 38 Mass. App. Ct. 596, 598 (1995) (in sexual abuse case not involving delayed reporting, "state of mind" evidence suggesting other sexual misconduct was impermissibly introduced).

As a matter of procedure, we note that consistent with the protocol enunciated in *Commonwealth* v. *Fales*, 60 Mass. App. Ct. 102, 107 (2003), in situations where the judge ascertains at the outset of trial that defense counsel intends to impeach a witness based on delayed reporting, or that in his opening argument he will suggest that such delayed disclosure is a basis for impeachment, the prosecutor may refer to that delay during her opening, and may elicit the circumstances of that disclosure on direct examination; she need not wait to rehabilitate the witness until after cross-examination. It would also be appropriate for the judge to issue a limiting instruction following such testimony, that the evidence is admissible only to explain the witness's state of mind in delaying her report of the alleged crime. *Ibid.*[3]

Lastly, the defendant claims that comments made by the prosecutor in closing argument regarding the victim's youth (she was seventeen years old at the time of the alleged rape) constituted an impermissible appeal to the jurors' sympathies and emotions, and were so prejudicial as to require reversal. We do not agree.

---

[3]No such instruction was given here, either when the evidence was admitted or in the jury charge, nor does the record reflect that any such instruction was requested. It cannot be discerned from the record presented by the parties whether any such instruction was requested during the first trial. Counsel may have made no request for such an instruction for tactical reasons. In any event, whether the absence of an instruction is analyzed for prejudicial error, *Commonwealth* v. *Peixoto*, 430 Mass. 654, 660 & n.6 (2000), or for a substantial risk of a miscarriage of justice, *Commonwealth* v. *Colon*, 64 Mass. App. Ct. 303, 310 (2005), we conclude upon review of the trial record that the jury's verdict should not be disturbed. As has been noted, the fact that the testimony regarding Boone involved conduct different from the sexual assault and kidnapping offenses for which the defendant was charged reduced any inflammatory impact, or the possibility that the evidence was used for impermissible propensity purposes. Moreover, both the victim and the defendant testified, and the jury had an opportunity to consider the testimony and evaluate their credibility regarding the defendant's alleged statement about Boone. We also note that the jury considered the evidence with care, convicting the defendant on the rape count, but acquitting him on the kidnapping charge.

The statements were made to rebut the defendant's theory of the case. Indeed, during his opening statement and summation, the defendant's attorney focused on the victim's age, arguing that the victim saw an opportunity to better herself with an older, more established, man. Although the defendant's attorney did timely object to some aspects of the prosecutor's closing remarks, he did not preserve an objection to the comments on the victim's age. Consequently, we review for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Bourgeois,* 391 Mass. 869, 884 (1984); *Commonwealth* v. *Kozec,* 399 Mass. 514, 518 n.8 (1987).

The prosecutor was permitted to argue the evidence and fair inferences therefrom. *Commonwealth* v. *Bourgeois,* 391 Mass. at 884. The closing as a whole focused more on the consistency and detail of the victim's account than on her age. Viewing the closing argument as a whole, *id.* at 885, we conclude that the prosecutor's references to the victim's age were made for reasons other than to evoke sympathy or emotion. They were directed to specific situations where her age or inexperience might be relevant to some other point, such as her willingness to obey an instruction from the defendant despite the circumstances. At least some of these comments appear to be aimed at rebutting the defense's use of the victim's age in its closing. These statements, at most, suggested to the jury that the victim's youth cut both ways. In any event, the judge instructed the jury that arguments by counsel were not evidence or controlling. In sum, there was no substantial risk of a miscarriage of justice. See *id.* at 885-886.

*Judgment affirmed.*