After a jury trial, the defendant was convicted of rape of a child aggravated by age difference, indecent assault and battery on a child under the age of fourteen, and intimidation of a witness. He appeals, arguing that it was prejudicial error for the judge to admit evidence of the defendant's prior bad acts against the victim's mother because, in his view, the acts were not relevant to the victim's state of mind, which was the stated purpose for which the testimony was offered. We affirm.
Background. In 2009, when the victim was twelve years old, the thirty-six year old defendant (the boy friend of the victim's mother) began touching her inappropriately; this behavior soon escalated to where the defendant was raping the victim every day at various private and public locations. In addition to raping her in the home that he shared with the victim's mother and the victim and her siblings, he raped the victim outdoors near some local railroad tracks, a wooded area next to a grocery store, in a barn in a secluded area in Wareham where the victim was fishing with the defendant, and during another outing while alone with the defendant. The defendant also touched the victim's breasts on some of these occasions. The rapes finally stopped in 2011 after the defendant moved out of the home (when the victim was thirteen or fourteen).
During the years of ongoing sexual abuse, the defendant continuously threatened the victim that he would hurt her or kill her if she told anyone what he was doing to her; he also threatened "that he would make sure that [her mother] was in the hospital." The victim believed these threats as she had seen the defendant act violently. In 2010 (while the defendant was still living with her family), the victim responded to a specific inquiry from a worker of the Department of Children and Families (department) that she was not being sexually abused. In addition, the victim did not immediately disclose the sexual abuse after the defendant moved from the home; she testified at trial that she did not disclose the abuse earlier because she was too afraid of the defendant and was sure that he was going to follow up on his threats.
The first person the victim told of the abuse (in 2012) was her best friend;[2] she told the friend that the defendant had raped her and that she was afraid of him because he had threatened to hurt her and her mother. At trial, the victim testified, over objection, to three separate incidents of violence by the defendant toward the victim's mother, each occurring approximately one year after the rapes began. The mother provided corroborating testimony, although giving a slightly different version of each incident.[3] First, the victim testified that, on August 12, 2010, she was at home in her bedroom when she heard the defendant and her mother "screaming" at each other in the living room; she then heard a telephone hit the wall. Shortly after, while the victim was in the kitchen and her mother was in the bathroom (located "right off of the kitchen"), the victim heard the sound of a slap. The victim did not see what was happening during the argument but, later that night, her mother told her that the telephone hit her mother before hitting the living room wall, and that the defendant slapped her in the face while she was in the bathroom.[4]
Next, the victim testified to an incident occurring on January 21, 2011, when again she heard the defendant and her mother arguing; the victim left the house and "went for a walk cuz [she] couldn't take it anymore." When she got back from her walk about fifteen minutes later, she was told that her mother had gone to the hospital; when she arrived at the hospital, the victim observed that her mother had a black eye and a "busted" knee cap.[5] The victim did not witness the incident; her mother later told her that she remembered fighting with the defendant and then next remembered waking up on the ground while the defendant was kicking her in the head.
Finally, in the third violent incident, the victim was present and personally involved. She testified that she walked into her "mother's room and [she] saw [the defendant] on top of [her] mother, choking her mother."[6] The victim jumped on top of the defendant and tried to get him off of her mother. The mother testified similarly about each of these incidents, and stated that she had told the victim what occurred during each incident.
The defendant did not testify at trial, but called two witnesses on his behalf to challenge the victim's credibility-a department investigator, and an intensive care coordinator (coordinator) at Bay State Community Services in Plymouth. The department investigator testified about the victim's 2010 denial of sexual abuse in her home; the coordinator testified that in 2013, during a "comprehensive home-based" assessment, the victim asked to work with a therapist because she had anger issues and was experiencing delusions and "out-of-body" experiences in school.[7]
Discussion. The defendant primarily argues error in admitting evidence of his prior violent acts against the victim's mother; he contends that the probative value of the evidence was substantially outweighed by its undue prejudice. Although the defendant agrees that prior bad acts may be admitted for a narrow purpose, he maintains that the victim's mother should have been allowed to testify only as to what she specifically told the victim about the two incidents that the victim did not personally witness, rather than the mother's own recollection and experience of each of the incidents. He also claims that admitting the photograph of the mother's injuries, and what he describes as the judge's flawed limiting instructions, only compounded the harm. We are not persuaded.
It is true that "[e]vidence of a defendant's prior bad acts [is] not admissible to show bad character or propensity to commit the crime for which he has been charged. It may, however, be admitted, if relevant, for some other purpose ...." Commonwealth v. Cheremond, 461 Mass. 397, 408 (2012). See Mass. G. Evid. § 404(b) (2017). Relevant evidence is generally admissible, but it may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. See Mass. G. Evid. § 403 (2017). Nonetheless, "[p]rior bad act evidence may ... be admitted where it 'tend[s] to rehabilitate the Commonwealth's witness by explaining why, after a long period of silence, she complained of the defendant's conduct.' " Commonwealth v. Hall, 66 Mass. App. Ct. 390, 394 (2006), quoting from Commonwealth v. Errington, 390 Mass. 875, 881 (1984).
Here, the victim's testimony, and her mother's corroborating statements, were properly admitted to show how the violent acts by the defendant affected the victim's state of mind in delaying her report of the rapes. As in Hall, "[t]he Commonwealth had a substantial and legitimate interest in rehabilitating its witness by showing why the witness informed [the police] about the defendant's alleged conduct after a long period of silence." Id. at 395, quoting from Errington, supra at 878. The evidence relating to the defendant's prior violence against the victim's mother, and the mother's testimony detailing what she told her daughter about those incidents, was relevant to explain the victim's delay in reporting the daily sexual abuse she was enduring, and why she denied it to the department investigator. Contrary to the defendant's argument, any conflicts or deviation in evidence between the victim's testimony and her mother's regarding the three incidents "are for the jury to resolve and do not render evidence inadmissible." Cheremond, supra at 409.
Based on the foregoing, we see no error in admitting the prior bad acts evidence in question for the limited purpose of showing the victim's state of mind. See ibr.US_Case_Law.Schema.Case_Body:v1">id. at 410. In addition, the limiting instructions both before and again during this testimony were proper, and we presume the jury followed those instructions. See Commonwealth v. Andrade, 468 Mass. 543, 549 (2014).
Judgments affirmed.

This friend testified as the first complaint witness; the judge provided a limiting instruction regarding first complaint testimony at the time the victim testified that she had told her friend of the rapes.

Prior to trial, the judge allowed (with limiting instructions) the Commonwealth's motion to include the defendant's prior and subsequent bad acts against the victim's mother. As the judge instructed, the testimony pertaining to these incidents was admitted "not for the truth of it" but, rather, "solely on the issue as to the effect [the incidents] may have had on [the victim's] state of mind" because the defendant was "taking issue with the length of the delay in the reporting" of the rapes by the victim; the judge excluded any evidence of the defendant's convictions of the three incidents. The victim's mother was allowed to testify only as to what she told the victim about each incident. The victim's testimony relating to these three violent incidents was accompanied by contemporaneous limiting instructions by the judge at four different times during the testimony, and again during the final charge to the jury.

After testimony regarding the first violent incident, the judge gave a limiting instruction informing the jury that they could consider this evidence "for a limited purpose if you believe it occurred. And that limited purpose is this. You may consider that evidence solely on the issue as to the effect it may have had on [the victim]'s state of mind. You may not consider it for any other purpose. Specifically, you may not conclude that, if the defendant, in fact, assaulted [the victim's mother], that he, in fact, raped and indecently assaulted [the victim], and that, therefore, he must be guilty of these crimes."

The victim confirmed that the photograph admitted in evidence accurately portrayed the injuries to her mother's face that the victim observed when she arrived at the hospital that day. The jurors again were instructed that the evidence regarding the second violent incident was to be considered only as to the effect that the incident had on the victim's state of mind.

According to the victim, this incident occurred sometime after the first time that the defendant brought her to Besse Park (2009), but before he moved out of the victim's home in 2011.

The coordinator testified that the victim had stated that she was experiencing delusions where she saw a girl at the end of her bed.