NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-37

COMMONWEALTH

vs.

LUIS MERCED NAVAEZ.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant was found guilty of rape, assault and battery on a family or household member, and assault and battery on a pregnant person. On appeal, the defendant argues that the judge erred in admitting prior and subsequent bad act evidence. We affirm.

Background. The defendant and the victim met in 2012 and were initially friends before beginning a romantic relationship, and the two started living together in 2014. After the defendant was released from prison in 2019, he often visited the victim at her apartment, where she was living with their son (born in 2016) and her son from a previous relationship. In July 2019, the defendant became aggressive when he found out

_____

[1] As is our usual practice, we take the defendant's name as it appears on the indictments.

that the victim was pregnant again. Around the same time, the victim also became suspicious that the defendant was in a relationship with another woman. When she questioned the defendant about her concerns, he refused to answer.

On August 3, 2019, the defendant arrived at the victim's apartment, and the two went into her bedroom. The victim questioned the defendant about whether he had been seeing another woman. The defendant became aggressive and told the victim that "he had just come over that day so [she] would cook for him" and "meet his needs as a woman." The victim's younger son tried to come into her bedroom, and she had a "tug of war" with the defendant so that she could get their son out of the room. The defendant pulled the victim from the doorway to the bed by her hair, covered her mouth so that she could not yell, and put his hands on her neck. The defendant then threw the victim on the bed, tore her pants off, held her arms with his hands, and put his penis in her vagina. The victim screamed and told the defendant to stop because she was afraid that she would lose the baby. The victim's fourteen year old son heard the screaming and heard the victim yell, "Get off of me" in Spanish. He testified that when the victim came out of her bedroom, she was hurt and bruised. She did not report the rape at that time.

On August 5, 2019, the victim went to see the defendant with plans to end their relationship. When she confronted him,

2

he picked up a phone charger and hit her with the cord multiple times.  After that, the victim was terrified and in pain.  Two days later, on August 7, 2019, the victim reported both the rape and the assault with the phone charger to the police.

Discussion.  Before trial, both parties filed motions in limine regarding the admission of prior and subsequent bad act evidence.  The Commonwealth sought to admit evidence that the defendant had previously committed an assault and battery on the victim in 2015 while she was pregnant, and that on August 5, 2019, the defendant struck the victim with the cord of a phone charger.  The judge allowed the Commonwealth's motion and denied the defendant's motion.

It is well established that "[e]vidence of a defendant's prior or subsequent bad acts is inadmissible for the purpose of demonstrating the defendant's bad character or propensity to commit the crimes charged." Commonwealth v. Crayton, 470 Mass. 228, 249 (2014).  However, the Commonwealth may introduce such evidence for another purpose, including to establish "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" (quotation omitted). Commonwealth v. Peno, 485 Mass. 378, 385 (2020).  A judge must engage in a two-part inquiry to determine whether to admit bad act evidence at trial.  See id. at 386.  "First, the evidence must be relevant to something other than the defendant's

3

propensity to commit the charged offense . . . Second, if the evidence is relevant, its prejudicial effect must not outweigh its probative value." Id. We review to determine whether there was error, and if so, whether it was prejudicial. See Crayton, 470 Mass. at 252.

Prior bad act evidence. The judge found that the prior bad act evidence (the 2015 assault) was relevant to the nature of the parties' relationship, the defendant's state of mind, his intent, and the absence of mistake. The defendant argues that this was error. We disagree. The evidence was relevant to demonstrate that the defendant and the victim had a hostile relationship. See Commonwealth v. Oberle, 476 Mass. 539, 550 (2017) ("It is well established that in appropriate cases, a defendant's prior acts of domestic violence may be admitted for the purpose of showing a defendant's motive and intent and to depict the existence of a hostile relationship between the defendant and the victim" [quotation omitted]). See also Commonwealth v. Beaulieu, 90 Mass. App. Ct. 773, 780 (2016) (prior bad act admissible to show "the history of the relationship [between the defendant and the victim] to give context to the jury" [quotation omitted]). Additionally, the victim was pregnant both during the 2015 assault and when the rape and assault in this case occurred. Accordingly, the earlier assault was probative of the defendant's mental state

4

and intent. See Oberle, 476 Mass. at 550-551. The judge reduced the prejudicial effect of the evidence by precluding the victim from testifying to the underlying facts of the 2015 assault. He also explained to the jury that they could only consider the uncharged prior act as probative of the nature of the parties' relationship or either party's state of mind. See Commonwealth v. Lowery, 487 Mass. 851, 868-869 (2021) (no abuse of discretion when risk of prejudice was mitigated by multiple limiting instructions).

The defendant also argues this evidence should not have been admitted in evidence because it was not charged conduct. However, evidence of uncharged conduct may be admissible in sexual assault cases to show the jury a full view of the relationship between the defendant and the victim. See Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006). This is particularly true when, as here, the judge instructed the jury that the conduct was uncharged, and it would therefore be unfair to consider it for propensity purposes. Additionally, the judge did not err in his determination that the 2015 assault was not too remote in time because the defendant had been incarcerated for almost three and a half of the four intervening years. See Commonwealth v. Kater, 432 Mass. 404, 416 (2000) (length between two crimes not so temporally remote as to preclude admission of

the earlier offense because defendant spent most of that ten-year period in prison).  There was no error.

Subsequent bad act evidence.  The judge found that the subsequent bad act evidence helped to explain why the victim delayed in reporting the rape and assault.  The defendant claims this was error, and that it had minimal probative value.  We are not persuaded as the judge both limited the scope of the victim's testimony about the assaults and gave the jury limiting instructions.  Moreover, when a judge determines that defense counsel plans to impeach a witness about a delay in reporting, as he did here based on the defendant's opening statement, it is proper for the Commonwealth to elicit testimony regarding the circumstances of the delayed disclosure on direct examination.  See Commonwealth v. Hall, 66 Mass. App. Ct. 390, 396 (2006).  The judge also gave a limiting instruction that the testimony was admitted only to explain the witness's state of mind in delaying her report of the crime.  See id.  Finally, subsequent bad acts may be admitted when the parties are in an ongoing, abusive relationship, as they were here, to explain a victim's

6

seemingly illogical actions and reactions.  See <u>Commonwealth</u> v.

<u>Childs</u>, 94 Mass. App. Ct. 67, 72 (2018).  There was no error.

<u>Judgments affirmed</u>.

By the Court (Meade, Blake &
Brennan, JJ.[2]),

*Joseph F. Stanton*

Clerk

Entered:  June 1, 2023.

_____

[2] The panelists are listed in order of seniority.