NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-95

COMMONWEALTH

vs.

KAMAL GARAMI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a District Court jury of assault and battery on a family or household member, G. L. c. 265, § 13M (a), and indecent assault and battery, G. L. c. 265, § 13H, the defendant appeals. He argues that the judge erred in precluding a police officer from testifying to the defendant's out-of-court statement and contends for the first time on appeal that the prosecutor's closing argument unfairly exploited the exclusion of that statement and improperly appealed to sympathy. We are troubled by the prosecutor's exploitation of the exclusion of the defendant's statement, which was at the Commonwealth's request. Even so, we discern no substantial risk of a miscarriage of justice and thus we affirm.

Background. Based on the evidence at trial, the jury could have found as follows. When the victim was thirty-six years old

and had known the defendant for about a month, she married him in an arranged marriage. A religious ceremony took place in Algeria and was not legally binding. The defendant was twenty-five years the victim's senior and she was financially dependent on him. In December 2018, the victim moved to the United States to live with the defendant. At first they stayed in hotels or slept in the defendant's truck. In February 2019, they moved into an apartment in Revere.

At 4:10 A.M. on February 28, 2019, the defendant arrived home and went into the bedroom where the victim was asleep. The defendant tried to have sex with the victim, but she told him no. The defendant grabbed the victim by her breasts, back, and buttocks. When the victim got out of bed and went to the living room, the defendant followed her and hit her in the head, causing her head to strike the wall. The defendant pushed the victim out the apartment door. At 4:25 A.M., the victim telephoned the police.

Police arrived and spoke to the victim in the lobby of the apartment building. She was distraught and frantic, the area under her eye was swollen, and there was blood coming from her nose. The victim was subsequently transported to the hospital, where examination revealed scratches and bruises on her breasts, back, and buttocks.

Meanwhile, two officers knocked on the apartment door.  The defendant answered and said that he had been asleep.

The defense theory was that the victim fabricated the crimes and the defendant was at the Revere police station when the victim said they occurred.  The defendant presented testimony of Officer Bryan Brenes that at around the time of these events, the defendant came into the Revere police station and made a report to Officer Brenes.  Officer Brenes initially testified that the defendant came into the station at "[a]pproximately 4 A.M." and was there until 4:15 A.M.; on cross-examination, he agreed that the defendant made the report at 3:45 A.M.; on redirect, he testified that the defendant left at about 4 A.M.  The home where the defendant and the victim lived was about a mile away from the police station.  In closing, defense counsel argued that the jury should believe the evidence placing the defendant at the police station at the time when the victim said he hit her, and that the victim's arranged marriage was "a lot of motive for reasons to ensure that she can stay" in the United States.

Discussion.  1.  Exclusion of defendant's statement to police.  The Commonwealth moved in limine to exclude Officer Brenes's testimony that the defendant reported on February 28 that six days earlier the victim's brothers had telephoned him

3

and threatened to kill him.[1]  At the hearing on the motion, the defendant argued that his statement to Officer Brenes was admissible not for its truth but to prove the victim's state of mind because it "precipitate[d]" her 911 call and showed her bias because the defendant was "somewhere else" at the time when the victim alleged he hit her.[2]  The prosecutor argued that the defendant's statement to Officer Brenes was hearsay and was not admissible to show the victim's motive to fabricate.  The judge admitted Officer Brenes's testimony that the defendant came to the police station and made a report, but excluded the officer's testimony about what the defendant said.[3]

On appeal, the defendant argues that his statement to Officer Brenes that the victim's brothers had threatened him was admissible to show the victim's "state of mind, bias, and motive

---

[1] The defendant has included in the record appendix copies of police reports that do not seem to have been included in the trial court record.  We focus on the offers of proof as to the testimony that were made by the Commonwealth in the motion in limine and by the defendant at the hearing.

[2] At the hearing, the defendant also argued that his statement to Officer Brenes was admissible to prove the defendant's state of mind that he wanted to end his relationship with the victim. The defendant does not make that argument on appeal, and so we do not reach it.

[3] A few minutes after the defendant left the police station, Officer Brenes heard a radio broadcast mentioning the defendant's address and radioed other police officers, "Heads up, the man that lives at that address was just recently here filing a threats report, so she may be saying this to cause trouble."  The judge also excluded Officer Brenes's testimony regarding that statement.  The parties do not raise the issue on appeal, so we do not reach it.

4

to fabricate."  He contends that the jury could have inferred that the victim would have learned from her brothers of their threats to the defendant and of the defendant's intent to end their relationship, which would have given her a motive to fabricate.  However, on cross-examination, the victim denied that there was any "disagreement or break-up" between her and the defendant at the time of these events.  And the defendant did not seek to cross-examine her about what she knew about her brothers' communications with the defendant, nor did he call any other witness, such as one of the brothers, to testify on that subject.  Contrast Commonwealth v. Joyce, 382 Mass. 222, 229 (1981) (defendant should have been permitted to cross-examine rape complainant about past prostitution arrests to show bias).

In those circumstances, Officer Brenes's testimony about what the defendant said the victim's brothers said was multiple level hearsay.  It "was inadmissible hearsay, because the defendant made the statement outside the court room, the defendant was not subject to cross-examination regarding the statement, the statement was intended to prove the truth of the matter asserted, and the defendant, not an adverse party, was offering the statement in evidence."[4]  Commonwealth v. McCowen,

---

[4] Contrary to the defendant's argument, the fact that during deliberations the jurors asked, "Are we able to view the police report from the [d]efendant?  3:45 A.M." did not render admissible the hearsay in that report.

5

458 Mass. 461, 485 (2010). See Commonwealth v. Steeves, 490 Mass. 270, 277 (2022); Mass. G. Evid. § 801 (2023).

2. Prosecutor's closing argument. The defendant argues that in closing the prosecutor unfairly exploited the exclusion of the defendant's statement to Officer Brenes and improperly appealed to sympathy. The defendant did not object at trial, and so we review the closing argument to determine if it contained error, and, if so, if the error gave rise to a substantial risk of a miscarriage of justice. See Commonwealth v. Kozubal, 488 Mass. 575, 590 (2021), cert. denied, 142 S. Ct. 2723 (2022). "A substantial risk of a miscarriage of justice exists if we have serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Schoener, 491 Mass. 706, 722 (2023).

In closing, the prosecutor argued, "Now, I would suggest to you that the [d]efendant went to the Revere Police Department in advance, knowing that when he came home that night, he might have to choose violence, because that's what he did. Planned it [in] advance, all right." The argument was improper. After having successfully excluded from evidence the defendant's statement about why he went to the police station, the prosecutor improperly argued that the jurors should infer that the reason he went there was because he was planning to "choose violence." We are troubled by the prosecutor's argument. "A

6

prosecutor is barred from referring in closing argument to matter that has been excluded from evidence . . . and a prosecutor should also refrain from inviting an inference from the jury about the same excluded subject matter" (quotation, citation, and alteration omitted). Commonwealth v. Lopez, 474 Mass. 690, 699 (2016). Further, "counsel may not, in closing, exploit the absence of evidence that had been excluded at h[er] request. . . . Such exploitation of absent, excluded evidence is fundamentally unfair and reprehensible" (quotation, citation, and alteration omitted). Commonwealth v. Demetrius D., 94 Mass. App. Ct. 12, 20-21 (2018).

However, in the circumstances of this case, we conclude that the improper argument did not give rise to a substantial risk of a miscarriage of justice. The victim's testimony that the defendant grabbed her by her breasts, back, and buttocks and hit her in the head was corroborated by her distraught demeanor and by evidence of her injuries, including swelling under her eye, blood coming from her nose, and scratches and bruises on her breasts, back, and buttocks. The theory of the defense focused on when, not why, the defendant was at the police station. Defense counsel argued that the credible timeline placed the defendant there until sometime after 4 A.M. In response, the prosecutor properly argued that the credible timeline placed the defendant at the police station shortly

7

before 4 <u>A</u>.<u>M</u>., and the defendant was not credible when he told a responding officer shortly after 4 <u>A</u>.<u>M</u>. that he had just been sleeping. In those circumstances, the prosecutor's improper argument about why the defendant was at the police station does not give us a "serious doubt" that the verdict would have been different had the error not been made, <u>Schoener</u>, 491 Mass. at 722. Moreover, the error was mitigated by the judge's instructions that closing arguments were not evidence, the jurors' memories of the evidence controlled, and the jurors should draw no adverse inference against the defendant because he did not testify.

As to the defendant's contention that the prosecutor improperly appealed to sympathy by referring in closing to the victim's testimony about her living situation, we discern no substantial risk of a miscarriage of justice. From the victim's testimony that her marriage to the defendant was arranged, defense counsel argued that she had "a lot of motive" to fabricate the crimes. From that same testimony and from the victim's testimony that the arranged marriage was not legally recognized, the defendant was twenty-five years her senior, and she was financially dependent on him, the prosecutor briefly argued that the defendant was "taking advantage" of the victim and had "entitlement" over her. See <u>Commonwealth</u> v. <u>Hall</u>, 66 Mass. App. Ct. 390, 397 (2006) (prosecutor's references to

8

victim's age relevant to her "willingness to obey" defendant, not to evoke sympathy). Cf. Commonwealth v. Sun, 490 Mass. 196, 212 (2022) (prosecutor's lengthy description of murder victim's good character not substantial likelihood of miscarriage of justice). We discern no substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Rubin, Ditkoff & Grant, JJ.[5]),

Assistant Clerk

Entered: March 25, 2024.

---

[5] The panelists are listed in order of seniority.